# BORRELLI & ASSOCIATES
### P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

December 28, 2018

<u>Via ECF</u>
The Honorable Eric N. Vitaliano
United States District Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: <u>*Parker v. The TJX Companies, Inc.*, Case No. 18-cv-04582-ENV-CLP</u>

Dear Judge Vitaliano:

  This office represents Plaintiff, Kristine Parker ("Plaintiff"), in the above-referenced wage and hour matter against her former employer, The TJX Companies, Inc. ("Defendant"), (Defendant and Plaintiff together as "the Parties"), in which she brings claims under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). The Parties have reached an agreement in principle to settle this action, which they have now reduced to writing. *See* Settlement Agreement ("Agreement"), attached hereto as **Exhibit A**. We write to explain the terms of the Parties' proposed settlement with respect to Plaintiff's FLSA claims, and to seek approval of the settlement

of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

Specifically, the Parties have agreed to resolve this case for a total sum of $14,539.24 (hereinafter the "Settlement Sum"). The Settlement Sum will be distributed as follows:

- Plaintiff: $9,426.16;

    *and*

- Borrelli & Associates, P.L.LC.: $5,113.08 for their attorneys' fees and costs, consisting of $4,713.08, or 1/3 of the net Settlement Sum, as fees, and $400.00 as costs, namely the filing fee.

For the reasons that follow, Plaintiff respectfully submits that the parties' proposed settlement is fair and reasonable under the circumstances of this case.

I. **Procedural History**

Plaintiff filed her Complaint in this action on August 14, 2018. In the Complaint, Plaintiff alleges that she worked for Defendant - - a well-known corporation that owns several chains of national retail stores, such as TJ-Maxx, Marshalls, and Home Goods - - first as a part-time merchandise associate at one of its TJ-Maxx stores located on Staten Island from October 10, 2011 until October 2014, and then as a full-time "coordinator" from November 2014 until December 8, 2016. Plaintiff claims that while she worked for Defendant as a full-time coordinator, Defendant required Plaintiff to work, and Plaintiff did in fact work, in excess of forty hours per week. More specifically, Plaintiff claims that Defendant routinely required Plaintiff to perform work off-the-clock during her forty-five-minute lunch break and additional off-the-clock work closing the store

---

[1] Plaintiff also brings claims in this action for Defendant's alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal with prejudice. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF # 32 at 2 n.1 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018) (noting that courts "have regularly approved of the practice whereby parties submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement."). Separately, the Parties are also resolving Plaintiff's claim of alleged disability discrimination that is currently pending at the New York City Commission on Human Rights ("NYCCHR"). Plaintiff represents, as explained in more detail below, that the Parties' agreement to resolve that administrative matter - - for which they must report the amount being paid to resolve it to the NYCCHR - - does not contain any provisions that impact the Parties' rights under their Agreement to resolve this case, and thus does not run afoul of any of the prohibitions described in *Cheeks* and its progeny. *See Santos v. Yellowstone Props., Inc.*, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (Engelmayer *J.*) (approving of the practice of resolving discrimination claims by way of private agreement that is not submitted to the court for approval in addition to agreement resolving FLSA claims, which is submitted to the court for approval).

2

when Plaintiff worked closing shifts.  Plaintiff claims that Defendant did not compensate her for this off-the-clock work, and thus failed to pay her at her overtime rate for these specific hours of work per week that were over forty hours, in violation of the FLSA.  Plaintiff pleaded in her Complaint that during the maximum relevant FLSA period, which is August 15, 2015 until the end of her employment, *see* 29 U.S.C. § 255(a), she worked an average of four and one-half hours of unpaid overtime each week.  Because Plaintiff's regular rate of pay was $9.91 per hour between August 14, 2015 and June 9, 2016, and $10.46 per hour between June 10, 2016 and December 8, 2016, Plaintiff alleged that she should have been paid at the rate of $14.87 per hour and $15.69 per hour respectively for this time, which, when multiplied by four and one-half hours of allegedly unpaid overtime work per week, totals $4,713.08.  Plaintiff contends that she is owed that amount under the FLSA, in addition to an equal amount in liquidated damages, plus her attorneys' fees and expenses.

Defendant strenuously denied and opposed Plaintiff's claims in this matter.  Defendant first argued that it had no policy requiring employees to perform off-the-clock work and instead maintained policies expressly ***forbidding*** employees from working off-the-clock.  Further, Defendant challenged Plaintiff as to the amount of time, if any, that she allegedly spent working off-the-clock, and disputed that Plaintiff did not receive all overtime compensation due to her.  In addition, Defendant argued that in the unlikely event that Plaintiff did perform ***any*** off-the-clock work, it was - - at most - - *de minimis*, on isolated incidents, and without the knowledge or approval of Plaintiff's supervisors or managers.  Defendant also contends that it at all times acted in good-faith. Given these considerations, according to Defendant, Plaintiff's claims present little – if any – legitimate exposure.

Prior to Defendant answering Plaintiff's Complaint, counsel engaged in settlement negotiations.  To that end, because Plaintiff filed her lawsuit on behalf of a putative Rule 23 class, Defendant provided documents sufficient to show that Plaintiff would have difficulty satisfying Rule 23's numerosity requirement, as Plaintiff's proposed class definition was limited to one job title and many of the people holding that title had signed arbitration agreements with class and collective action waivers, leaving as less than forty the total number of workers who did not.  Thus, after Plaintiff was satisfied with Defendant's proof on that score, while strenuously denying Plaintiff's allegations, Defendant offered to pay Plaintiff the entire total amount that she claims Defendant owes to her under the FLSA (compensatory plus liquidated damages), plus an additional 1/3 of that amount in attorney's fees and expenses.  Rather than seek to pursue the matter on a class or collective basis given, among other things, Defendant's contemplated defenses, and the uncertainty presented by the class and collective action waivers, Plaintiff accepted Defendant's offer.

3

## II. The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. Plaintiff submits that the Parties' proposed settlement is fair and reasonable based on the *Wolinsky* factors.

### A. *Range of Possible Recovery*

Based on the allegations in the Complaint as detailed above, even if the trier of fact were to credit **all** of Plaintiff's allegations as pleaded in the Complaint, Plaintiff's **maximum** compensatory recovery for her FLSA claims would be $4,713.08, plus liquidated damages in an equal amount. Of course, if Defendant successfully prevailed on any or some of its defenses, Plaintiff could recover nothing, or possibly only a small fraction of what she claims she is owed. Thus, a realistic range of recovery for Plaintiff's FLSA claims in this matter was between zero and $9,426.16. Based on her distribution under the Parties' Agreement, after deduction of attorneys' fees and expenses, ***Plaintiff is receiving 100% of the maximum amount*** that she could potentially recover under the FLSA, an exceptional result, particularly under the circumstances in this case.

### B. *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, litigation expenses would substantially increase. As the matter was at its inception, Defendant's deadline to answer or respond to Plaintiff's complaint was forthcoming, and the heavily disputed issues of fact would lead to multiple depositions of key fact witnesses, likely dispositive motion practice, and a strong likelihood of a need for trial on the merits for most of the claims in this case. With litigation expenses set to imminently rise for all Parties, the Settlement Sum is especially fair and reasonable.

### C. *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place after the Parties exchanged information regarding the suitability of this case for class treatment, and were then conducted between experienced counsel without any semblance of fraud or collusion.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiff's release in the Agreement is limited to any wage and hour claims that Plaintiff has or may have had against Defendant, related entities, and their principals, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206); *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks,* 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015).[2] Likewise, the Agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks,* 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks,* 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).[3]

---

[2] While the Parties' NYCCHR settlement agreement does contain a general release, this is permissible to resolve non-wage claims, such as the discrimination claims at issue in that matter between the same Parties here. *Gaspar v. Personal Touch Moving, Inc.*, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015); *see also Banegas v. Mirador Corp.*, 2016 WL 1451550, at *3 (S.D.N.Y. Apr. 12, 2016) (citing *Gaspar*, 2015 WL 7871036, at *2) ("Courts need not scrutinize the liability release for fairness" if the general release stems from a non-FLSA claim that happens to be settled in the same agreement or case).

[3] Similarly, the Parties' NYCCHR settlement does contain confidentiality and non-disparagement provisions. However, it also contains carve-out language that permits Plaintiff to make truthful statements discussing Plaintiff's FLSA claims, the amounts set forth in the FLSA settlement, and her truthful experiences litigating her FLSA claims, a term that post-*Cheeks* courts have routinely approved. *E.g. Greggio*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018); *Simono*, No. 1:16-cv-05385 (AJN), ECF 32 (S.D.N.Y. Oct. 23, 2017); *Panganiban v. Medex Diagnostic & Treatment Center, LLC*, 2016 WL 927183, at *2 (E.D.N.Y. Mar. 7, 2016) (citing *Martinez v. Gulluoglu*, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016)).

### D. *The Requested Attorneys' Fees and Costs are Reasonable*

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the Settlement Sum attributable to attorneys' fees is $4,713.08, which is one-third of the total net amount, after deducting $400.00 in costs for the filing fee, for a total of $5,113.16.[4] Plaintiff's counsel's request that the Court approve fees of one-third of the total settlement is "consistent with the trend in this Circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); *Ezpino*, 2017 WL 3037483, at *3 (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)) ("'A one-third contingency fee is a commonly accepted fee in this Circuit.'"); *Kochilas*, 2015 WL 5821631, at *8 (collecting cases). Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See Cregg v. Firstservice Residential N.Y., Inc.,* Docket No. 15-cv-3876-LB, D.E. 14, at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *Calle*, 2014 WL 6621081, at *3 ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of obtaining a settlement or award, and does not in any way serve to detract from Plaintiff's maximum FLSA recovery. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").[5]

---

[4] Similarly, as part of the Parties' settlement of Plaintiff's NYCCHR proceeding, Plaintiff's counsel is receiving one-third of the net settlement sum as fees, plus reimbursement for costs attributed to that matter, thereby avoiding any dilution of Plaintiff's recovery in either matter.

[5] Should the Court wish to conduct a lodestar cross-check, Plaintiff's counsel will promptly provide their billing records and an explanation for the rates contained therein. However, given the modest sum attributed to attorneys' fees, and the fact that it obviously took counsel more than $4,713.08 of time to investigate the facts giving rise to this matter, draft the Complaint, negotiate the settlement and the Agreement, and then to prepare this motion, Plaintiff's counsel urges that such an exercise is hopefully not necessary.

### III.     Conclusion

For the forgoing reasons, Plaintiff respectfully requests that the Court approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and as described herein, and dismiss this matter, including all of Plaintiff's claims, with prejudice. A Stipulation and Order of Dismissal with Prejudice is attached as an exhibit to the Parties' Agreement for the Court's convenience.

                                                            Respectfully submitted,

                                                            _____
                                                            Alexander T. Coleman, Esq.
                                                            *For the Firm*

To: All Counsel *via* ECF